# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| MARIO MARQUETTE MYERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 16-2120-JDT-cgc |
| | ) | |
| SHELBY COUNTY, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

---

## ORDER DENYING PENDING MOTIONS,
## DISMISSING COMPLAINT,
## CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
## AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

---

On February 22, 2016, Plaintiff Mario Marquette Myers ("Myers"), who is currently a pre-trial detainee at the Shelby County Criminal Justice Complex ("Jail") in Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, accompanied by a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) After receiving the proper documentation from Myers, this Court issued an order on March 3, 2016, granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 6.) The Clerk shall record the Defendants as Shelby County,[1] Shelby County Sheriff

---

[1] The Court construes claims against the Jail as claims against Shelby County. Although Myers also names "Interpol" as a defendant, he makes no attempt to explain the identity of this entity. Because Myers's claims against this entity concern his treatment at the Jail, the Court

William "Bill" Oldham, Floyd Bonner, and Shelby County Criminal Court Judge James "Jim" Lammey. Defendants are sued in their individual and official capacities.

Myers alleges that on May 11, 2015, he and his family were unlawfully removed from their home at 5406 Stephen Forest Cove in Memphis, Tennessee without service of a summons and without due process allowing them to prove they had a right to be on that property. (ECF No. 1 at 2.) Myers's daughter called the Shelby County Sheriff out to the scene, requested that a report be taken, and asked for the deputies to stop the "strangers from putting all their property on the street." (*Id.*) Myers's daughter told the deputies that she needed Defendant Oldham to come to the home to present the documents proving they had a right to be there, but the deputies said Defendant Oldham would not come to the scene and no report would be taken because it was a civil matter. (*Id.*)

Myers's second allegation is that on October 14, 2015, he was unlawfully "detained, kidnapped and arrested [sic]" in Alabama without a writ, warrant or valid agreement, by two Shelby County Sheriff Deputies, C. Hillard and Mr. Chers. (*Id.* at 3.) Even though Myers told the deputies that he had documents prohibiting their action against him, they told Myers that they were going to extradite him from Alabama to Shelby County, Tennessee on warrants. (*Id.*) When Myers asked for the warrants, the deputies told him that he would get the warrants when they got to the Jail in Memphis. (*Id.*) Myers states he has not been served the writ or warrants, and he has been continually denied in his request to see Defendant Oldham to "clarify, verify, and reconcile" these issues. (*Id.*) Myers contends that he has been in jail from the arrest date

also construes these as claims against Shelby County.

through the present day, going through four different court divisions, all who have seen his documentation relating to how he should be treated. (*Id.*)

Myers alleges that he has been compelled by Jail deputies, under the direction of Defendant Oldham, to "Trespass into these lower/inferior court venue(s) without [his] consent for an overwhelming [number] of times," where he was denied due process and solicited into contractual agreements for attorneys, which he refused. (*Id.* at 4.) After a number of court appearances where Myers refused attorneys and tried to recuse each appearing judge, Myers was transferred to Division Five and Defendant Lammey's courtroom. Defendant Lammey ordered Public Defender Dewayne Settles, who is not a party to this complaint, to get Myers to agree to his counsel. (*Id.*at 4-5.) Myers told Settles that it is conflict of interest for Settles to represent him, that Division Five is operating outside of the Article III of the Constitution, and that it is a conflict of interest on behalf of Defendant Lammey to hear from Myers. (*Id.*at 5.) Myers was told by Settles that Defendant Lammey was going to assume jurisdiction. (*Id.*)

Even though Myers told Settles that he needed to talk to the judge, Settles returned to the courtroom without Myers and agreed to the return court date of December 16, 2015. (*Id.* at 6.) Myers contends that on December 16, 2015, Defendant Lammey denied him due process by denying his attempt to recuse Lammey, compelled Myers to be represented by Settles, disregarded Myers's statement that "this is not a court of law and is not a court of record," became upset at Myers and told Myers to leave his court room while resetting the next hearing date for February 1, 2016. (*Id.*) On the next court date, Myers again argued that Defendant Lammey did not have jurisdiction, resulting in

Defendant Lammey holding Myers in contempt of court and telling Myers that he would remain in jail until he underwent a psychological evaluation. (*Id.*)

Myers alleges that while in the custody of Defendant Oldham, he filed eight grievances; has been attacked and beaten by Defendant Oldham's subordinates, DRT Lieutenant K. William and Interpol on camera; has been placed in solitary confinement; has been pepper sprayed for trying to request the chain of command to assist him in getting free; has been sent to solitary confinement for not consenting to receive unknown medical shots; has been photographed and placed under the radar of Defendant Oldham's deputies; and has been slandered by being called a "sovereign citizen." (*Id.* at 8-9.) Myers alleges that Defendant Oldham and Interpol have denied him equal protection under the law.

Myers contends that on another unspecified date he called the Sheriff's Department to his home to help him deal with a "peaceful civil matter" but was taken from his home and wrestled to the ground by two deputies, who also sprayed him with pepper spray, handcuffed him, and beat him. (*Id.* at 9.) He was taken to the regional medical center but was denied treatment due to not having insurance and being called a sovereign citizen. (*Id.*) The deputies said that he resisted arrest and called 911 too many times. (*Id.*) Myers was told that to get out of jail, he had to get fingerprinted and make bail. (*Id.*) After experiencing blood in his bowels, Myers was "forced" to pay bail in order to get medical treatment for the injuries he incurred after being beaten by the two deputies. (*Id.* at 9-10.) Myers received treatment from Baptist Memorial Hospital and forwarded the bill to the Shelby County Sheriff's Department; however, he was later

informed that the deputies were not liable, resulting in the debt being on Myers's credit report.  (*Id.* at 10.)

Myers alleges that due to the actions of Defendants Oldham, Lammey and Interpol, he now suffers from post-traumatic stress disorder, abnormal blood pressure and pain in his head, face, neck, and back.  (*Id.*at 11.)  Myers further alleges that the change in his health is due to the cruel and unusual punishment to which he was subjected while at the Jail.  (*Id.*)

Myers seeks $40 million in damages, to be exonerated and reconciled from any charges, sanctions, claims, or warrants, $500,000 in damages for violation of his liberty, and $6,000 per day for the time his was compelled to be in jail.  (*Id.* at 12.)

By way of background, on December 19, 2013, two indictments were issued against Myers.  Indictment #13 06342 charged him with unlawful possession of a weapon and possession of a controlled substance.  *See* jssi.shelbycountytn.gov.  That case is still pending.  Indictment #13 06304 charged Myers with aggravated assault, reckless endangerment with a deadly weapon, intentionally evading arrest and domestic assault with bodily harm.  *Id.*  Those charges were dismissed on March 7, 2017.  *Id.*  On July 2, 2015, two additional indictments were issued against Myers.  Indictment #15 03122 and #15 03160 charged him with failure to appear in a felony matter.  (*Id.*)  Those matters are also still pending.  *Id.*

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

        (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

        (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th

Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants.  Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party.  While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Myers filed his complaint on the court-supplied form for actions under 42 U.S.C. § 1983.  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Myers alleges that he was unlawfully removed from his home and as a result his property was removed from the home.  Claims for deprivation of property are not actionable under § 1983 if adequate state remedies are available to redress the

deprivation. *See, e.g.*, *Parratt v. Taylor*, 451 U.S. 527 (1981), *partially overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330-31 (1986); *Hudson v. Palmer*, 468 U.S. 517 (1984); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985). "[T]he State of Tennessee does provide an adequate post-deprivation remedy for takings of property." *McMillan v. Fielding,* 136 F. App'x 818, 820 (6th Cir. 2005); *see also Brooks v. Dutton,* 751 F.2d 197, 199 (6th Cir. 1985). Plaintiff is entitled to file a claim with the Tennessee Claims Commission or to sue the Defendants, or any other responsible person, in state court.

Claims against Defendants Oldham and Bonner in their official capacities are properly construed as claims against Shelby County, which is already a named Defendant. The complaint does not assert a valid claim against Shelby County. When a § 1983 claim is made against a municipality, the court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Even if it were assumed that the complaint alleged a violation of Myers's constitutional rights, the second issue would be dispositive of Myers's claims against Shelby County.

A local government "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a

constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)).

Although civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity, *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, *see, e.g., Fowler v. Campbell*, Civil Action No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar.

10

30, 2007); *Yeackering v. Ankrom*, No. 4:05-CV-00018-M, 2005 WL 1877964, at *2 (W.D. Ky. Aug. 5, 2005); *Oliver v. City of Memphis*, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); *cf. Raub v. Corr. Med. Servs., Inc.*, No. 06-13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying motion to dismiss where complaint contained conclusory allegations of a custom or practice); *Cleary v. Cnty. of Macomb*, No. 06-15505, 2007 WL 2669102, at *20 (E.D. Mich. Sept. 6, 2007) (same); *Morningstar v. City of Detroit*, No. 06-11073, 2007 WL 2669156, at *8 (E.D. Mich. Sept. 6, 2007) (same); *Chidester v. City of Memphis*, No. 02-2556 MA/A, 2006 WL 1421099, at *3 (W.D. Tenn. June 15, 2005). The complaint does not allege that Myers suffered any injury arising from an unconstitutional policy or custom of Shelby County.

In addition, the complaint contains no factual allegations against Defendant Bonner. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Although Myers alleges that his equal protection rights have been violated, he does not have a valid equal protection claim. The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. Most Equal Protection claims "allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (internal quotation marks and citation omitted). The complaint does not allege

that Plaintiff is a member of a protected class.[2]  That Plaintiff may have been treated differently than other prisoners is insufficient to state a claim because prisoners are not a protected class for equal protection purposes.  *See, e.g., Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005); *Berry v. Traughber*, 48 F. App'x 483, 485 (6th Cir. 2002); *Garrison v. Walters*, No. 00-1662, 2001 WL 1006271, at *2 (6th Cir. Aug. 24, 2001); *Heddleston v. Mack*, No. 00-1310, 2000 WL 1800576, at *2 (6th Cir. Nov. 30, 2000) ("prisoners incarcerated at the same institution as Heddleston who wished to mail items weighing more than one pound on January 9, 1999, do not constitute a protected class"); *Aldred v. Marshcke*, No. 98-2169, 1999 WL 1336105, at *1 (6th Cir. Dec. 20, 1999); *Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999); *Preston v. Hughes*, No. 97-6507, 1999 WL 107970, at *1 (6th Cir. Feb. 10, 1999); *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998) ("neither indigents nor prisoners are a suspect class"); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).

This also is not an appropriate case for a "class of one" Equal Protection claim:

The purpose of [the Equal Protection Clause] is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. . . . Equal protection challenges are "typically . . . concerned with governmental classifications that affect some groups of citizens differently than others." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) (internal quotation marks and citation omitted).  However, the Supreme Court has recognized that a "class-of-one" may bring an equal protection claim where the plaintiff alleges that:  (1) he or "she has been intentionally treated differently from others similarly situated"; and (2)

---

[2] Alternatively, a plaintiff may allege that the challenged action unduly burdens the exercise of a fundamental right.  This case does not involve the exercise of a fundamental right.

> "there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).

*United States v. Green*, 654 F.3d 657, 650-51 (6th Cir. 2011) (additional internal quotation marks and citation omitted); *see also Davis v. Prison Health Servs.,* 679 F.3d 433, 441 (6th Cir. 2012) (distinguishing "class of one" claims from other equal protection claims evaluated under the rational basis standard).

The complaint does not allege any facts suggesting that Myers was arbitrarily treated differently than similarly situated prisoners at the jail or that he has a valid claim for a "class of one."

Myers has no claim against Defendant Lammey. It is well settled that judges, in the performance of their judicial functions, are absolutely immune from civil liability. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991); *Stump v. Sparkman*, 435 U.S. 349, 363 (1978); *Bright v. Gallia Cnty., Ohio,* 753 F.3d 639, 648-49 (6th Cir. 2014); *Leech v. DeWeese,* 689 F.3d 538, 542 (6th Cir. 2012). Whether a judge or other official is entitled to absolute immunity in a given case turns on a "functional" analysis. *Harlow v. Fitzgerald*, 457 U.S. 800, 810-11 (1982). The "touchstone" for applicability of absolute judicial immunity is "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993). The allegation is that Defendant Lammey's rulings during the criminal court proceeding violated Myers's civil rights. Clearly, these actions were within the scope of Judge Lammey's judicial function; therefore, Myers's claims against Defendant Lammey are barred by judicial immunity.

Myers claims that he was unlawfully detained and arrested; however, the complaint does not state a valid malicious prosecution claim against any defendant. The Sixth Circuit "recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment," which "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006) (internal quotation marks omitted). The "tort of malicious prosecution" is "entirely distinct" from that of false arrest, as the malicious-prosecution tort "remedies detention accompanied not by absence of legal process, but by wrongful institution of legal process." *Wallace*, 549 U.S. at 390 (2007) (internal quotation marks omitted).

> To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove the following: First, the plaintiff must show that a criminal prosecution was initiated against the plaintiff and that the defendant "ma[d]e, influence[d], or participate[d] in the decision to prosecute." *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007); *see also McKinley v. City of Mansfield*, 404 F. 3d 418, 444 (6th Cir. 2005); *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001); *Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th Cir. 2002). Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution, *Fox*, 489 F.3d at 237; *Voyticky*, 412 F.3d at 675. Third, the plaintiff must show that, "as a consequence of a legal proceeding," the plaintiff suffered a "deprivation of liberty," as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007); *see Gregory v. City of Louisville*, 444 F.3d 725, 748-50 (6th Cir. 2006) (discussing the scope of "Fourth Amendment protections . . . beyond an initial seizure," including "continued detention without probable cause"); cf. *Heck v. Humphrey*, 512 U.S. 477, 484, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994 ) ("[U]nlike the related cause of action for false arrest or imprisonment, [an action for malicious prosecution] permits damages for confinement imposed pursuant to legal process."). Fourth, the criminal proceeding must have been resolved in the plaintiff's favor. *Heck*, 512 U.S. at 484, 114 S. Ct. 2364 ("One element that must be alleged and proved in a

malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.").

*Sykes v. Anderson*, 625 F. 3d 294, 308-09 (6th Cir. 2010) (additional citations and footnote omitted).

The various events of which Myers complains in this case appear to have resulted in four indictments being returned against him. The fact that the Myers was ultimately indicted by a grand jury shows the existence of probable cause for his arrest. "[T]he finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Higgason v. Stephens*, 288 F. 3d 868, 877 (6th Cir. 2002) (quoting *Ex parte United States*, 287 U.S. 241, 250 (1932)). In light of the grand jury indictments, any malicious prosecution claim fails because Myers cannot show the absence of probable cause.

Myers's allegations of conflict of interest appear to concern ongoing criminal proceedings in state court and are not properly brought against Defendant Lammey. However, even if Defendant Lammey was the proper Defendant, this Court cannot order that Plaintiff's state criminal charges be dismissed or otherwise interfere in those proceedings. Under the Anti-Injunction Act, 28 U.S.C. § 2283, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The Sixth Circuit has explained that "[t]he Act thereby creates 'an absolute prohibition against enjoining state court proceedings, unless the

injunction falls within one of three specifically defined exceptions,' which are set forth in the statutory language." *Andreano v. City of Westlake*, 136 F. App'x 865, 879-80 (6th Cir. 2005) (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970)). Federal injunctions against state criminal proceedings can be issued only "under extraordinary circumstances where the danger of irreparable loss is both great and immediate." *Younger v. Harris*, 401 U.S. 37, 45 (1971) (internal quotation marks and citation omitted). The Supreme Court has emphasized that

> [c]ertain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered "irreparable" in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.

*Id.* at 46. Irreparable injury may be found only where the statute under which the Plaintiff is charged is "flagrantly and patently violative of express constitutional prohibitions, or where there is a showing of bad faith, harassment, or other unusual circumstances that would call for equitable relief." *Mitchum v. Foster,* 407 U.S. 225, 231 (1972) (internal quotation marks, ellipses and citations omitted). In this case, Plaintiff does not allege any unusual or extraordinary circumstances that were unable to be addressed through his defense in the criminal proceeding.

Further, any claim for money damages arising from Myers's allegedly unlawful prosecution or imprisonment is premature.

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on

16

direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnotes omitted). Thus, a prisoner has no cause of action under § 1983 if the claims in that action hinge on factual proof that would call into question the validity of a state court order directing his confinement unless and until any prosecution is terminated in his favor, his conviction is set aside, or the confinement is declared illegal. *Id.* at 481-82; *Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir. 1995). Only one of the indictments was dismissed. Others remain pending, thereby justifying his confinement at the Jail.

Myers alleges that Shelby County deputies, subordinates under Defendant Oldham, violated his constitutional rights. However, Myers has no claim against Defendant Oldham merely because of his supervisory position. Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must

plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). The complaint does not allege that Defendant Oldham, through his own actions, violated Myers's rights.

On May 25, 2016, Myers filed a Motion for Removal of Venue. (ECF No. 8.) The Motion, which is incoherent, is DENIED as moot because all claims are being dismissed *sua sponte*.

On August 22, 2016, Myers filed a Motion to Enter Default Judgment (ECF No. 9.) That motion is DENIED. The Defendants are not in default because the Court has not ordered service of process. As the case is being dismissed, the motion for default judgment is also moot.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at

*1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, leave to amend is not warranted.

The Court DISMISSES Myers's complaint as to the Defendant for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend is DENIED. All pending motions are also DENIED.

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a

complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

Therefore, it is CERTIFIED, pursuant to 28 U.S.C. §1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Plaintiff nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, the Plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the second dismissal of one of his cases as frivolous or for failure to state a claim.[3] This

---

[3] *See Myers v. Aramark Food Services*, No. 15-2824-JDT- (W.D. Tenn Aug. 15, 2016) (dismissed for failure to state a claim).

"strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE